## EX PARTE WESLEY SPILLER.

### No. 1288.  Decided June 23, 1911.

**1.—Aggravated Assault—County Jail—Fine—Costs.**

Where defendant was convicted of aggravated assault after having been twice tried on an indictment for murder, and his punishment was thirty days jail confinement without fine, and he was duly committed on a judgment until all costs are paid, he could be held in jail for the costs which accumulated during the several trials, notwithstanding he had already been confined in jail long enough to serve out the thirty days confinement assessed against him.

**2.—Same—Statutes Construed—Misdemeanor—County Convict.**

Under articles 845 and 846, Code Criminal Procedure, taken in connection with other articles of the Penal Code, Code of Criminal Procedure and the Revised Statutes, costs adjudged against a defendant are collected or enforced as in other misdemeanor cases; but under no circumstances can the defendant be confined for the costs longer than twelve months.  See opinion for construction of these various articles as they apply to county convicts.

**3.—Same—Costs Paid by State.**

Where, upon a conviction for aggravated assault assessing thirty days confinement in the county jail, after defendant had been twice tried on an indictment for murder and the costs of the different trials had accumulated to a large amount, part of which the State had paid the officers, relator on writ of habeas corpus, who was the defendant, could not complain that he was held in confinement in jail for costs that had been previously paid by the State.

**4.—Same—Witness Fees—Taxing Costs.**

Where defendant had been convicted of aggravated assault after he had been twice tried on an indictment for murder, his punishment being thirty days confinement in the county jail, and until all costs of the prosecution are fully paid, he could not complain that the clerk continued to tax witness fees against him in the murder cases that were claimed after he was first committed to jail.

Appeal from the District Court of McCulloch.  Tried below before the Hon. Jno. W. Goodwin.

Appeal from habeas corpus proceedings asking release from confinement in the county jail, on the ground that relator should not be held in jail over thirty days—which was the original fine for which he was committed—to pay the costs in the different trials.

The opinion states the case.

*J. E. Shropshire,* for appellant.—Cited Ward v. White, 86 Texas, 170; Landa v. State, 45 S. W. Rep., 713; 11 Cyc., 291; Grisham v. State, 19 Texas Crim. App., 504.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On May 6, 1909, relator was indicted by the grand jury of McCulloch County for the murder of A. C. Wike by cutting him with a knife.  He was tried twice on this indictment.  Either a mistrial was had on the first or a new trial granted, the record does not disclose which.  The second trial occurred on

March 4, 1911. On that trial the court correctly charged the jury on murder in the second degree, manslaughter, assault with intent to murder and aggravated assault. The jury found the defendant guilty of aggravated assault and battery and assessed his punishment "at thirty days confinement in the county jail." On that verdict the District Court of McCulloch County rendered a judgment with the recitations ordinarily contained in the judgments of said court in such cases and concluded the judgment as follows: "It is therefore considered and adjudged by the court that the defendant, Wesley Spiller, is guilty of the offense of aggravated assault and battery as found by the jury, and that he be punished as determined by the jury, by confinement in the county jail of this county for a period of thirty days from this date, and that the State of Texas do have and recover of and from said defendant, Wesley Spiller, all costs in this prosecution expended, for which execution will issue, and the defendant is ordered into the custody of the sheriff, to be by him committed to the jail of this county, there to be confined for a period of thirty days from this date, and further until all costs of this prosecution are fully paid." The relator herein—the defendant in that case—did not appeal from such judgment and the same is still in full force and effect. On the day of his conviction the clerk of the District Court issued a proper commitment bearing said date, reciting the conviction and judgment and commanding the sheriff to commit the relator—the defendant in that case—to the jail of Mc-Culloch County for thirty days to await the further action of the court "and until all costs of this case is paid."

At the time this commitment was issued there had been taxed up as costs in the case the total sum of $446.11; $351.36 of it had at that time been paid by the State. On that date the District Court adjourned for that term. Afterwards from time to time other properly subpoenaed witnesses appeared before the clerk and proved up properly before him their witness fees, and as they did so he taxed their fees as costs, and from time to time as the witnesses did so he issued to the sheriff capias profines whereby he was commanded to safely keep the appellant in said county jail until said costs were paid and until the judgment was performed. Under the last capias profine issued the costs taxed aggregated $740.71. From that time to the hearing on this habeas corpus, which occurred on May 19, 1911, $40.50 additional witness fees were proven up and taxed. So that on the trial of the habeas corpus, the total costs in the case as taxed up to that time, aggregated $781.21. The clerk testified on said habeas corpus trial that he would continue to tax any other additional witness fees proven up later and issue capias profines, including them wherever the served process showed such witnesses were properly subpoenaed and would make the proper affidavit of attending in obedience thereto; and the sheriff testified that he would continue to hold the appellant under the commitment and

capias profines coming into his hands until the costs in accordance therewith were fully paid.

The sheriff further showed that he kept the relator in jail from March 4, until April 4, 1911, the full thirty days, on which latter date the relator presented to him his affidavit under article 856, Code Criminal Procedure, and in accordance therewith. It does not appear from the statement of facts whether the appellant was put to work, as provided for in said article 856, or not. We take it, however, that at the time of the making of this affidavit the purpose and object of the relator was then to be allowed $3 per day for each day he was in the county jail thereafter if not placed at work as therein provided. On May 15, 1911, the appellant applied to the Hon. John W. Goodwin, judge of the Thirty-Fifth Judicial District Court, for a writ of habeas corpus setting up substantially the above facts and claiming his discharge. The habeas corpus was awarded by the district judge, and after a full hearing of all the facts on May 19, the district judge remanded the relator to the custody of the sheriff of McCulloch County to be held by him under the aforesaid order and judgment of the District Court convicting him of aggravated assault until all of said costs are fully paid, satisfied and discharged. The relator excepted to that judgment and has brought the habeas corpus case here on appeal.

1. The main contention of relator on this habeas corpus appeal is that as he was convicted in said murder trial of an aggravated assault and battery and his punishment assessed at a term of thirty days in jail only and no pecuniary fine whatever was assessed against him, he can not be held in confinement for the costs only, he having already been confined in jail the thirty days.

The attorney for the relator has filed an able brief and also made an oral argument on the submission of the case. He concedes that the identical question has not been decided by this court or any other in this State that can be found. We have made diligent search and have been unable to find where the question has been directly decided. The relator cites us to articles 845 to 860 of the Code of Criminal Procedure and articles 1, 3, 5, 6 and 20 of the Penal Code, and to the cases of Ward v. White, 86 Texas, 170; Landa v. State, 45 S. W. Rep., 713, and 11 Cyc., 291, to sustain his position.

We have carefully considered all of these authorities cited by relator and many others which we thought had any bearing on the question and have reached the conclusion that the district judge was correct in remanding the relator as stated.

The articles of the Code of Criminal Procedure cited are under title 9, chapter 3, subdivision 2; and chapter 4, subdivisions 1 and 2 of said Code. Subdivision 2 of said chapter 3 is headed "Judgment in cases of Misdemeanor." Articles 845 and 846 thereunder are as follows:

"Article 845. When the punishment assessed against a defendant

is a pecuniary fine only, the judgment shall be that the State of Texas recover of the defendant the amount of such fine and all the costs of the prosecution, and that the defendant, if present, be committed to jail until such fine and costs are paid, or if the defendant be not present, that a capias forthwith issue commanding the sheriff to arrest the defendant and commit him to jail until such fine and costs are paid. Also, that execution may issue against the property of such defendant for the amount of such fine and costs."

"Article 846. When the punishment assessed is other than a pecuniary fine, the judgment shall specify it and order its enforcement by the proper process. It shall also adjudge the costs against the defendant and order the collection thereof, as in other cases."

It will be seen by these two articles that the first directs specifically what the judgment of the court shall be in case the defendant is convicted of a misdemeanor and a pecuniary fine only is assessed against him, to the effect that he shall be committed to the jail until the fine and costs are paid. It and other articles also authorize and direct that an execution may be issued against him for both the fine and costs as well as a commitment, until they are paid. The contention is made by relator that the latter part of said article 846 as follows: "It shall also adjudge the costs against the defendant and order the collection thereof, as in other cases," as the word "collection" is used therein, does not contemplate or authorize the defendant to be incarcerated for the payment of costs alone, when no fine was assessed against the party, only imprisonment.

. Article 9 of the Penal Code is, "This Code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects . . ."

Article 25 of Code Criminal Procedure is, "The provisions of this Code shall be liberally construed so as to attain the objects intended by the Legislature: the prevention, suppression and punishment of crime." These rules of interpretation, enacted by the Legislature, properly applied in this case, and taking into consideration said articles 845 and 846 above quoted, convince us that the latter clause of article 846, above quoted, with reasonable certainty and clearness, shows that the costs adjudged against the defendant are "ordered to be collected as costs in other cases" means other misdemeanor cases. The word "collection" used therein should not be construed to restrict the collection thereof to an execution only when in "all other misdemeanor cases" it has been universally held by this court that they can be collected and shall be collected by requiring a defendant to work in a workhouse or on a county farm (R. S., 3729), established by the several counties for that purpose (R. S., 3727); or upon the public roads, bridges or other public works as provided by R. S., 3733, or hired out (R. S., 3744). Revised Statutes, article

3728, expressly defines a county convict as "any person who may have been convicted of a misdemeanor or petty offense, and whose punishment has been assessed at confinement in the county jail for any term; or who, under a like conviction, has been adjudged to pay a pecuniary fine and is unable so to do." Revised Statutes, article 3743, provides that any county convict condemned to imprisonment in the county jail as a punishment either in whole or in part may avoid manual labor in the workhouse or elsewhere by the payment into the county treasury of one dollar for each day of the term of his imprisonment. Article 856 of the Code Criminal Procedure, under which the relator made and delivered to the sheriff the affidavit above noted, provides that when a county convict is not put at work in some of the modes prescribed by chapters IX and X, title LXXIX of the Revised Statutes, that he shall be allowed $3 per day for each day he is confined in the county jail to pay out either the fine and costs or both.

Article 859, Code Criminal Procedure, provides: "When a defendant has remained in jail the length of time *required by the judgment,* he shall be discharged," etc., the judgment in this case evidently referring to that provided for by said articles 845 and 846, and, as held above, includes also the costs of the case as well.

The several provisions of chapters 9 and 10, title 79, of Revised Statutes, which provide for the working or hiring out of county convicts all provide in effect and article 3739 expressly: "No convict under this chapter shall ever be required to work or be hired for more than one year." So that whatever the costs may amount to in the murder case for which the relator is confined, under no circumstances can he be confined for the costs longer than twelve months. That would be in addition, however, to the one month served by him as the penalty fixed for the commission of the offense.

2. The next contention by relator is that he should not be held for any of the costs that had been previously paid by the State and refers us to articles 1090 and 1091 of Code Criminal Procedure and to Revised Statutes, article 3739.

The contention is made by the relator under this ground that the claim is in favor of the State, and as the State is never barred by limitation and as the relator can not pay it, the State will never get it.

The articles that we have cited above of the Code Criminal Procedure and Revised Statutes make it plain that the State and perhaps the officers and witnesses who are entitled to the costs taxed may never get any of it, or perhaps not but a small portion of it. This, however, does not prevent the holding of the relator in jail or at work for the length of time authorized by law. That would be to his advantage and not to his disadvantage. . We can not agree to the relator's contention on this point.

3.   The next contention by the relator is that he could not be held in custody for any of the witness fees taxed up against him in the murder case that were claimed after he was first committed under his conviction; that he was misled, because at the time he concluded to accept the conviction and not appeal, the costs had been taxed up only to the amount of $446.11.

We have been unable to find any authority that would indicate that the clerk could not tax any costs after conviction or the adjournment of the court.   Under the terms of the judgment against relator he was to be confined in jail not only the thirty days found by the jury, but further "until all costs of this prosecution are fully paid."   He is presumed to know the law and certainly knew of the judgment rendered against him.   We think neither the State nor any of the officers or witnesses would lose their costs because they were not taxed up at the time of the adjournment of the court.   This is neither the practice as a matter of fact, nor is it the law.   There is nothing in this contention of the relator.

There being no error in the judgment of the lower court, the judgment in this case is affirmed.

*Affirmed.*